UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 12-44876

LARRY P. HOLLAND, and                               Chapter 7
JANET L. HOLLAND,
                                                    Judge Thomas J. Tucker
            Debtors.
_____/

**OPINION REGARDING TRUSTEE'S OBJECTION
TO DEBTORS' SECOND AMENDED CLAIMS OF EXEMPTION
UNDER 11 U.S.C. § 522(d)(1)**

At issue in this Chapter 7 case is whether the Debtors may claim an exemption in real property they own in Mancelona, Michigan under 11 U.S.C. § 522(d)(1), as a residence. For the following reasons, the Court concludes that Debtors may not claim such an exemption.

This dispute came before the Court for a hearing on June 20, 2012, on the "Trustee's Objection to Debtors' Second Amended Claim of Exemptions" (Docket # 46, the "Second Objections to Exemptions"), which objected to the Debtors' amended claims of exemption in (A) real property located at 8764 Twin Lake Road, Mancelona, Michigan (the "Real Property Objection"); and (B) a vehicle described as a 2008 Dodge Nitro (the "Vehicle Objection"). The Court overruled the Trustee's Vehicle Objection, as unnecessary, in its Order filed June 20, 2012 (Docket # 48). The Real Property Objection remains for decision.

As required by the Court's June 20 Order, the Trustee has filed a transcript of the § 341 first meeting of creditors held in this case on April 11, 2012. Having considered that transcript, and all of the parties' written and oral arguments, the Court now will sustain the Trustee's Real Property Objection, and disallow the Debtors' amended claims of exemption in the Mancelona, Michigan property.

The issue presented is whether, as of the date on which Debtors filed this Chapter 7 case (February 29, 2012), the Debtors used the property located at 8764 Twin Lake Road, Mancelona, Michigan (the "Mancelona Property") as a residence within the meaning of 11 U.S.C. § 522(d)(1). *See* 11 U.S.C. § 522(d)(1)(exemption applies, in pertinent part, to "[t]he debtor's aggregate interest . . . in real property . . . that the debtor or a dependent of the debtor uses as a residence"); *In re Wengard*, 453 B.R. 243, 250 (B.A.P. 6th Cir. 2011)("a debtor's exemptions are determined as of the [bankruptcy] filing date")(citing numerous cases); *Makoroff v. Buick* (*In re Buick*), 237 B.R. 607, 609 (Bankr. W.D. Pa. 1999) and cases cited therein (holding that a debtor's entitlement to an exemption under § 522(d)(1) is "determined as of the filing date of . . . [a bankruptcy] petition")(citations omitted).

The Debtors' sworn testimony at the § 341 meeting held on April 11, 2012 clearly demonstrates, beyond any genuine dispute, and the Court finds and concludes, that as of the February 29, 2012 petition date, the Debtors were *not* using the Mancelona Property as a residence. The Debtors attended the § 341 meeting and testified together. Their testimony includes the following points:

- Each of the Debtors testified that his/her address is 31782 Leona, Garden City, Michigan (not the Mancelona Property address);[1]

- When asked by the Trustee to "tell me about this property up in Mancelona," the Debtor Larry Holland testified that the property in Mancelona has on it: a "one bedroom cabin" and a "pole barn."[2] Both of the Debtors testified that "[n]obody" lives in the cabin.[3]

---

[1] Tr. of § 341 first meeting of creditors (Docket # 50, cited below as "Tr. __) at 3. The Garden City, Michigan address is also the address the Debtors gave in their bankruptcy petition (Docket # 1 at 1).

[2] Tr. 8.

[3] Tr. 9.

• According to Larry Holland's testimony, the cabin is "[j]ust a shell sitting there," and both Debtors testified that the cabin has no plumbing or windows in it.[4] And Mr. Holland testified that the pole barn on the Mancelona Property has in it "[j]ust some building materials, . . . some windows, . . . [a]nd just odds and ends that we've collected, stuff that we've taken from her[e] to there."[5]

• Larry Holland testified that the Debtors' home in Garden City was sold at a sheriff's foreclosure sale on November 9, 2011.[6] Both of the Debtors testified that they are going to move from the Garden City home.[7] This, of course, clearly implies that as late as the April 11, 2012 § 341 meeting, a month and one-half after the bankruptcy petition date, both of the Debtors were still residing at the Garden City home.

• The Debtor Janet Holland testified that the Debtors are "trying to move to" the Mancelona Property.[8] Immediately after this, the following question and answers occurred:

> Q. When are you going to do that, if it doesn't have plumbing or windows?
>
> A. (Mrs. Holland) Well, I'm going to - -
>
> A. (Mr. Holland) Staying with a friend up there.
>
> A. (Mrs. Holland) Yeah. She just lives a couple miles down.[9]

• Finally, when asked by the Trustee, regarding the "property up north," "[w]hen was the last time you were up there?" Mrs. Holland answered "last October."[10] The fact that the Debtors had not even been to the Mancelona Property between October 2011 and the date of the April 11, 2012 § 341 meeting is, of course, very strong evidence that as of the February 29, 2012 petition date, neither of the Debtors was using the Mancelona Property

---

[4] Tr. 8-9, 11.

[5] Tr. 8.

[6] Tr. 6.

[7] Tr. 11.

[8] *Id.*

[9] Tr. 11-12.

[10] Tr. 13.

3

as a residence.

On July 5, 2012, after the Trustee filed the transcript of the § 341 meeting, the Debtors filed a supplemental response to the Trustee's Second Objections to Exemptions. Attached to the supplemental response was a purported affidavit of the Debtors, which attempted to explain and modify some of the Debtors' testimony given at the § 341 meeting.[11] But the Debtors' affidavit was not signed by either of the Debtors; nor was the document signed by any notary. Rather, all signature lines on this document are blank. For this reason alone, the Court must disregard Debtors' purported affidavit in its entirety.

Moreover, the Debtors' unsigned, un-notarized, purported affidavit conflicts with the Debtors' sworn testimony given at the § 341 meeting. Because of this, the Court would disregard the affidavit even it had been properly signed and notarized, to the extent of any inconsistency with the Debtors' § 341 meeting testimony.

The purported (unsigned) affidavit says the following, in pertinent part:

> 6. **[As of the date of our filing this Chapter 7 case on February 29, 2012] [w]e had been residing at both the Garden City Property and the Mancelona Property.** The Garden City Property was sold at a Sheriff's Sale in November, 2011 and the redemption period expired on or about May 9, 2012. We believe the mortgage lender now has possession of the Garden City Property.
>
> 8. **In June 15, 2008, we moved a travel trailer onto the Mancelona Property and have resided there for a portion of each year since.[12] The trailer is equipped with heat, air-

---

[11] Docket # 51.

[12] The Court notes that Debtors' counsel stated during the June 20, 2012 hearing that as of the bankruptcy petition date, the Debtors were living both in the Garden City home and on the Mancelona Property, in a trailer on the lot. Debtors' counsel also stated that the trailer did not belong to the Debtors.

4

**conditioning, one full bathroom, and one bedroom and is serviced by a septic tank, septic field, and well that has been operational since 2009.**

9. At the Section 341 meeting held on April 11, 2012, we stated that we stayed with a friend near the Mancelona Property. **That statement was incomplete** because we were nervous and became confused. **We do, in fact, stay with a friend who lives close to the Mancelona Property, but only during the cold weather** due to the fact that the trailer on the Property is not comfortable during cold weather because it is poorly insulated. When the furnace is turned on, the warm air inside the trailer causes excessive condensation resulting in water dripping from the walls and ceiling of the trailer. During more mild weather, we live in the trailer. We have had a bank account in Kalkaska since 2009 and have received electric bills from the local utility provider, Great Lakes Energy, since 2008.[13]

Debtors' purported (unsigned) affidavit was filed with the Court almost three months after Debtors gave their § 341 meeting testimony, and some four and one-half months after Debtors filed their bankruptcy petition. The material highlighted in bold above is inconsistent with Debtors' § 341 meeting testimony. The Court could not disregard Debtors' earlier testimony because of a contradictory, later affidavit. So the Court could not consider the Debtors' purported affidavit, even if it had been signed and notarized (which it was not). *Cf. Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986)("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.")(citation omitted); *Laise v. City of Utica*, 970

---

No travel trailer is listed in the Debtors' schedules or amended schedules. And, of course, the Debtors could not claim an exemption in a trailer that they do not own. No mention of this travel trailer was made by the Debtors during their § 341 testimony. And in any event, this assertion by Debtors' counsel is contradicted by the Debtors' April 11, 2012 § 341 testimony, including Mrs. Holland's testimony that the Debtors had not even been to the Mancelona Property since October 2011.

[13] Docket # 51, Debtors' [purported] Affidavit, at ¶¶ 6, 8-9 (emphasis added).

F.Supp. 605, 610 (E.D. Mich. 1997)(same).

Moreover, the Court notes that neither the Debtors' July 5, 2012 purported (unsigned, un-notarized) affidavit, nor the supplemental response filed by Debtors' attorney on July 5, 2012, contradicts, explains, or even mentions Mrs. Holland's § 341 meeting testimony, described above, that as of April 11, 2012, the Debtors had not even been to the Mancelona Property since October 2011. Clearly the Debtors were not using the Mancelona Property as a residence as of the February 29, 2012 petition date.

Because neither of the Debtors was using the Mancelona Property as a residence as of the petition date (February 29, 2012), neither of them may claim an exemption for it under 11 U.S.C. § 522(d)(1).

For these reasons, the Court will enter an order sustaining the Trustee's Real Property Objection, and disallowing the Debtors' amended claims of exemption in the Mancelona Property.

**Signed on July 9, 2012**              **/s/ Thomas J. Tucker**
                                        **Thomas J. Tucker**
                                        **United States Bankruptcy Judge**

6

12-44876-tjt    Doc 52    Filed 07/09/12    Entered 07/09/12 16:50:26    Page 6 of 6